UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| KEDRICE DORSEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 3:12-CV-853 JD |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

<u>OPINION AND ORDER</u>

Kedrice Dorsey, a *pro se* prisoner, filed an amended habeas petition pursuant to 28 U.S.C. § 2254 challenging his 2004 drug conviction in LaPorte County. (DE 5.) For the reasons stated below, the petition is denied.

I.      BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Dorsey's burden to rebut this presumption with clear and convincing evidence. *Id.* On direct appeal, the Indiana Court of Appeals set forth the facts underlying Dorsey's conviction as follows:

> On April 27, 2003, at approximately 6:30 p.m., Michigan City Police Officer Marty Corley ("Officer Corley") received a radio dispatch regarding an accident involving either personal injury or property damage at the intersection of Eighth and Franklin Streets. Officer Corley proceeded to the referenced intersection, but did not observe indications of an accident. Officer Corley then responded to a second dispatch, then describing a "fight in progress" at the nearby intersection of Ninth and Oak Streets.

> Officer Corley saw Dorsey, whom he knew from prior contacts, walking away from the area. An individual known only as Donald flagged down Officer Corley and pointed to Dorsey, stating that Dorsey "was the problem." Officer Corley began to drive toward Dorsey, observing him. Dorsey moved toward his father, Bubble Gay ("Gay"), who had previously been walking approximately twenty-five to thirty feet away from Dorsey. Dorsey passed a clear plastic bag to Gay, and Gay "cuffed" the

bag, closing his hand immediately over it. Dorsey and Gay came to a stop in front of a house on Tenth Street.

Officer Corley stopped his vehicle, exited and began to question Dorsey about the fight. Gay moved his free hand to cover the hand holding the plastic bag. Officer Corley turned his attention to Gay and asked what was in the bag. Gay replied "nothing," but threw a clear plastic bag to the ground. Officer Corley picked up the discarded bag and could see that it contained individually packaged white rocks, consistent with the appearance of crack cocaine.

Officer Corley then began to question the men about the contents of the bag, when Dorsey began to walk away. Officer Corley told him to stop, but Dorsey refused. Officer Corley stated, "I'm not going to chase [you]. I know [who] you are. I'll just get a warrant for your arrest." Dorsey responded, "go ahead and get the warrant," and began to run. Officer Corley radioed for assistance, and Officer Tony McClintock ("Officer McClintock") responded. Officer McClintock pursued Dorsey on foot, and Officer Corley gave chase in his vehicle. Ultimately, Dorsey and Gay were apprehended in front of an apartment complex on Tenth Street. Both were arrested.

While Dorsey was in custody, Detective A1 Bush began to question Dorsey about a shooting that Dorsey allegedly witnessed. Dorsey indicated that he wanted to talk to Detective Mark Swistek, because "the dope belonged to [Dorsey] and did not belong to Gay." In a tape-recorded statement, Dorsey indicated that he sold cocaine because he could not find employment. On the evening in question, he had been in possession of thirty-five rocks of crack cocaine, and had sold fifteen. However, Dorsey had gotten involved in a fight with his girlfriend and the police were summoned. He began to walk away, with the twenty remaining rocks and $482.00 in cash.

On April 23, 2003, Dorsey was charged with Dealing in Cocaine and, on December 16, 2003, a jury found him guilty as charged. On January 28, 2004, Dorsey was sentenced to fifty years imprisonment.

*Dorsey v. State*, No. 46A03–0409–CR–394, slip op. 3-4 (Ind. Ct. App. Oct. 4, 2005) (internal

citations omitted). Dorsey appealed, but his court-appointed attorney was granted leave to withdraw

pursuant to *Anders v. California*, 386 U.S. 738 (1967).[1] *Id.* at 13-14. Thereafter, Dorsey filed a *pro*

---

[1] Under *Anders*, an appointed appellate attorney who, after consideration, finds the defendant's appeal to be wholly frivolous, can advise the court and request permission to withdraw, supplying a brief addressing anything in the record that would arguably support an appeal; the request to withdraw will be granted if the court agrees an appeal would be frivolous. *Anders*, 386 U.S. at 740-43.

*se* appellate brief raising the following arguments: (1) the probable cause determination was erroneous; (2) his confession was involuntary; (3) the police investigatory stop was not based on reasonable suspicion; (4) the jury was not properly instructed on the elements of the offense; (5) his Confrontation Clause rights were violated because the state failed to call "Donald" as a witness at trial; (6) the trial court improperly imposed an aggravated sentence; and (7) he was denied effective assistance of appellate counsel when his counsel withdrew. *Id.* at 2-3. The Indiana Court of Appeals found no merit to any of these arguments, and affirmed his conviction and sentence in all respects. *Id.* at 5-16. Dorsey sought transfer to the Indiana Supreme Court, raising all but the jury instruction and aggravated sentence claims. (DE 14-9.) His petition was denied. (DE 14-3.)

Dorsey then filed a *pro se* post-conviction petition in state court. *Dorsey v. State*, No. 46A04-1109-PC-563, slip op. at 4 (Ind. Ct. App. Aug.13, 2012). Following an evidentiary hearing, his petition was denied. *Id.* On appeal, he raised a number of free-standing claims pertaining to the legality of his arrest and confession, and the admission of certain evidence at trial. *Id.* at 6. The Indiana Court of Appeals found the free-standing claims to be either waived or barred by *res judicata*, because some issues had been litigated on direct appeal, and others were available on direct appeal but were not raised. *Id.* at 5-6. Dorsey also claimed that he received ineffective assistance of trial counsel on two grounds: counsel failed to challenge the probable cause hearing on the ground that it was not properly recorded in compliance with state law; and counsel was ineffective in failing to make a proper continuing objection to the admission of evidence obtained in connection with his arrest. *Id.* at 7-13. The appellate court concluded that Dorsey failed to establish that counsel was deficient, or that he was prejudiced by counsel's performance. *Id.* at 7-11. Accordingly, the court affirmed the denial of post-conviction relief. *Id.* at 13. Dorsey filed a petition to transfer claiming

3

only that trial counsel was ineffective in failing to challenge the recording of the probable cause hearing. (DE 14-14.) The petition was denied. (DE 14-4.)

Thereafter, Dorsey sought federal habeas relief. In his amended petition, he raises the following claims: (1) Officer Corley's investigatory stop was illegal because it was based solely on an anonymous tip from "Donald" that he was causing a problem in the neighborhood, and additionally, his confession was involuntary because the police promised to release his father if he admitted the drugs belonged to him; (2) he received ineffective assistance of appellate counsel when his counsel withdrew pursuant to *Anders*; and (3) his trial counsel was ineffective in failing to argue that the probable cause hearing was not properly recorded as required by a state statute. (DE 5 at 3-4.)

## II.   ANALYSIS

Dorsey's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant U.S. Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from U.S. Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* This is a difficult standard to meet, and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, —U.S.—, 131 S. Ct. 770, 786 (2011). Instead, to obtain relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

As a procedural matter, the court notes that Dorsey did not file a traverse responding to the state's arguments. Instead he filed a "Verified Motion for Default Judgment," wherein he appears to argue that he is entitled to immediate release from custody because the respondent did not file a timely return to the petition. (DE 13.) Contrary to his suggestion, a minor procedural irregularity in briefing would not entitle him to federal habeas relief, since the court can only grant such relief when the stringent requirements of AEDPA are satisfied. 28 U.S.C. § 2254(d). In any event, the

docket reflects that the respondent sought and obtained an extension of time to file the return, and subsequently filed a return by the deadline. (DE 12, 14.) There is no basis to find the respondent in default or to order Dorsey's release from custody on this ground. Accordingly, the motion will be denied.

Turning to the merits, Dorsey's first claim is premised in part on a violation of his Fourth Amendment rights. Specifically, he argues that police lacked reasonable suspicion to stop him based solely on the tip from "Donald" that he was causing a problem in the neighborhood. His reasoning is somewhat difficult to follow, since the record reflects that Officer Corley stopped him not only because of the tip (and the earlier call to police about a fight), but because he personally observed Dorsey passing a plastic bag to his father, which in the officer's experience suggested possible drug activity. *Dorsey*, No. 46A03-0409-CR-394, slip op. at 3, 9.

Regardless, Dorsey's Fourth Amendment claim was fully litigated in state court, and is therefore not cognizable in this proceeding. The U.S. Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). The exclusionary rule, which requires the suppression of evidence obtained in violation of the Fourth Amendment, is not a "personal constitutional right" of the accused; rather, "it is a judicially created means of effectuating the rights secured by the Fourth Amendment." *Brock v. United States*, 573 F.3d 497, 499 (7th Cir. 2009). The rule was intended to deter violations of the Fourth Amendment by "removing the incentive to disregard it," but it has attendant costs, since it "deflects the truthfinding process and often frees the guilty." *Stone*, 428 U.S. at 484, 490. Thus, the

6

rule "has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Id.* at 486-87. In habeas proceedings the "contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 495.

Therefore, federal habeas courts are barred from reviewing Fourth Amendment claims that were fully and fairly litigated in state court. *Id.* at 494-95; *see also Ben-Yisrayl v. Buss*, 540 F.3d 542, 552 (7th Cir. 2008) ("As long as a habeas petitioner enjoyed an opportunity for full and fair litigation of a Fourth Amendment claim in state court, federal habeas review of the claim is barred."). A habeas petitioner had a full and fair opportunity to litigate a Fourth Amendment claim if he apprised the state court of his Fourth Amendment claim, and the state court thoroughly analyzed the facts and looked to the appropriate body of decisional law to resolve the claim. *Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005); *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002).

A review of the state proceedings demonstrates that Dorsey had a full and fair opportunity to litigate his Fourth Amendment claim, and he does not argue otherwise. Dorsey raised a claim challenging the investigatory stop and arrest in a pretrial motion to suppress, on which the trial court held an evidentiary hearing, and at two levels of direct appellate review. The Indiana Court of Appeals issued an opinion thoroughly analyzing the facts pertaining to the stop and arrest, looking to applicable Fourth Amendment case law to resolve his claims. *See Dorsey*, No. 46A03-0409-CR-394, slip op. at 7-9. Although Dorsey obviously disagrees with the result reached by the Indiana courts, the opportunity for full and fair litigation of a Fourth Amendment claim "guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324 F.3d 527,

532 (7th Cir. 2003). Unless there has been a "subversion of the hearing process," a federal habeas court "will not examine whether the judge got the decision right." *Id.* at 531. Dorsey has not argued or demonstrated that there was a subversion of the hearing process in state court. Instead, he "simply asks [the court] to disagree with the state court's decision," a path that is foreclosed by *Stone. Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005). Accordingly, this claim is not cognizable on federal habeas review.

Within claim one, Dorsey also argues that his confession was involuntary. (DE 5 at 3.) A statement will be considered involuntary under the U.S. Constitution when, under the totality of the circumstances, the accused did not make the decision to confess of his own free will. *See Mincey v. Arizona,* 437 U.S. 385 (1978); *Schneckloth v. Bustamonte,* 412 U.S. 218, 226–28 (1973). Determining whether a defendant's will was overborne in a particular case is a highly factual determination, and requires consideration of "all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth*, 412 U.S. at 225-26. Factors to consider include the experience of the accused, the length of the detention, the prolonged nature of the questioning, and the use of any improper police tactics, such as physical force or the deprivation of food. *Id.* In rejecting Dorsey's claim on direct appeal, the Indiana Court of Appeals applied a standard consistent with the above cases, holding that under the totality of the circumstances Dorsey failed to show that his confession was anything other than a product of his own free will. *Dorsey*, No. 46A03-0409-CR-394, slip op. at 6-7. Based on the record, the court's determination was not unreasonable.

Dorsey claims that his confession was "coerced" by a promise from police that his father would be released if he admitted the drugs were his. The record belies this claim, and instead shows

8

that while an officer was speaking to Dorsey about an unrelated matter, he made a spontaneous statement that the drugs belonged to him and not his father. *Dorsey*, No.46A03-0409-CR-394, slip op. at 6. Thereafter, he was taken to an interview room and gave a full, tape-recorded confession explaining in detail how he had been selling drugs, and how he had handed the drugs to his father after seeing Officer Corley approaching in his squad car.[2] (DE 16, State's Trial Ex. 2.) At one point during this process, Dorsey asked what would happen to his father, and the officer responded that if Dorsey "told the truth" and his father's account coincided with Dorsey's, his father would be released. *Dorsey*, No.46A03-0409-CR-394, slip op. at 6. After police spoke with both men, Gay was in fact released from custody. (DE 16, Trial Tr. at 152.)

Dorsey has failed to show that his confession was anything other than a product of his own free will. He may have had a personal desire to protect his father from going to jail—or he may have felt responsible for his father's arrest since he handed his father a bag of crack cocaine in full view of a police officer—but his decision to admit the drugs were his cannot be attributed to any wrongdoing by police. *See Holland v. McGinnis*, 963 F.2d 1044 (7th Cir. 1992) (statement was voluntary where police did not lead the defendant to consider "anything beyond his own beliefs regarding his actual guilt or innocence" and his own "moral sense of right and wrong"). The state court reasonably determined that Dorsey's confession was voluntary, and accordingly, this claim is denied.

In claim two, Dorsey asserts that he was denied effective assistance of appellate counsel. (DE 5 at 3.) Under the Sixth Amendment, a criminal defendant is entitled to "effective assistance of

---

[2]   The record reflects that this was not Dorsey's first involvement with the criminal justice system; at the time of his arrest he had "an extensive history of juvenile offenses and adult crimes, including one prior conviction for the same offense, dealing in cocaine." *Dorsey*, No. 46A03-0409-CR-394, slip op. at 12.

counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." *Bobby v. Van Hook*, 558 U.S. 4, 16 (2009). To prevail on such a claim, the petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). On the deficiency prong, the central question is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices[.]" *Richter*, 131 S. Ct. at 788. The court's review of counsel's performance is deferential, and there is an added layer of deference when the claim is raised in a habeas proceeding; "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Furthermore, the court must "evaluate [counsel's] performance as a whole rather than focus on a single failing or oversight, " *Ebert v. Gaetz*, 610 F.3d 404, 412 (7th Cir. 2010), and must respect its "limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, —U.S.—, 131 S. Ct. 733, 741 (2011).

On the prejudice prong, the petitioner must show there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland*, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel had acted differently." *Richter*, 131 S. Ct. at 791. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 792. Where it is expedient to do so, the court may resolve an ineffective assistance claim solely

10

on the prejudice prong, because if the petitioner cannot establish prejudice, there is no need to "grade" counsel's performance. *Strickland*, 466 U.S. at 697.

A claim of ineffective assistance of appellate counsel is also subject to the *Strickland* analysis. *Howard v. Gramley*, 225 F.3d 784, 789-90 (7th Cir. 2000). On the deficiency prong, the petitioner must show that counsel failed to present a "significant and obvious" issue on appeal. *Id.* at 790. However, counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). On the prejudice prong, the petitioner must demonstrate that if the argument had been raised, there is "a reasonable probability that his case would have been remanded for a new trial or that the decision of the state trial court would have been otherwise modified on appeal." *Howard*, 225 F.3d at 790. Where the underlying argument has no merit, an ineffective assistance claim cannot succeed, because "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

Here, Dorsey formulates his ineffective assistance claim as follows: "The Indiana Court of Appeals adopted a standard that allows appellant [sic] counsel to file *Anders* brief to withdraw from the appellant's first appeal there is no case law under the Indiana Constitution making it inappropriate for appellant [sic] counsel to file *Anders* brief." (DE 5 at 3.) Although unclear, Dorsey may be claiming that the Indiana Court of Appeals violated state law in permitting his appellate attorney to withdraw from the case. However, even if he is correct, such a claim would not entitle him to federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas relief cannot be granted for violations of state law).

11

Giving the petition liberal construction, Dorsey may also be claiming that he was denied effective assistance under the Sixth Amendment when his appellate counsel withdrew from the case. In rejecting Dorsey's claim, the Indiana Court of Appeals properly applied *Anders*, in which the U.S. Supreme Court expressly approved of the procedure under which Dorsey's counsel was granted leave to withdraw in this case. *See Dorsey*, No. 46A03-0409-CR-394, slip op. at 13-16. Dorsey has not established any error in this regard. Furthermore, even if he could establish that his counsel was deficient in deciding to withdraw, he would also have to establish prejudice. To do so he must identify an argument he wanted counsel to raise that had some reasonable probability of success. *Howard*, 225 F.3d at 790. He has not identified any such argument. Instead, he appears to fault counsel for not raising the arguments Dorsey suggested to him; however, Dorsey raised those arguments himself in a *pro se* brief, and the Indiana Court of Appeals found no merit to any of them. *See Dorsey*, No.46A03-0409-CR-394, slip op. at 5-13. Based on the record, the state court's rejection of this claim was not unreasonable. Accordingly, the claim is denied.

Dorsey's final claim is that he was denied effective assistance of trial counsel. (DE 5 at 4.) Specifically, he claims that counsel was deficient in failing to challenge the probable cause hearing on the ground that it was not properly recorded as required by a state statute. In his view, such an argument would have resulted in his immediate release from custody. In rejecting this claim on post-conviction review, the Indiana Court of Appeals properly identified *Strickland* as the governing standard, and concluded that Dorsey did not establish deficient performance or prejudice in connection with this claim. *Dorsey*, No 46A04-1109-PC-563, slip op. at 6-11. Based on the record, the state court's resolution of this claim was not objectively unreasonable.

In support of his claim, Dorsey relies on INDIANA CODE § 35-33-7-2, which provides: "At or before the initial hearing of a person arrested without a warrant for a crime, the facts upon which the arrest was made shall be submitted to the judicial officer, ex parte, in a probable cause affidavit." In lieu of an affidavit, the facts supporting an arrest may be submitted orally under oath to a judicial officer. *Id.* If the facts are submitted orally, "the proceeding shall be recorded by a court reporter, and, upon request of any party in the case or upon order of the court, the record of the proceeding shall be transcribed." *Id.* § 35-33-7-2(a). Dorsey asserts that in his case the hearing was not properly recorded, and argues that the remedy for a technical violation of this provision is immediate release from custody.[3] (DE 5 at 4.) However, his argument finds no support in the statute. Instead, he appears to be misreading a portion of the statute which provides for immediate release when a judicial officer determines that the facts as provided "do not establish probable cause." IND. CODE § 35-33-7-2(b). The statute says nothing about the remedy for a technical violation of the recording requirement.

Moreover, in rejecting Dorsey's claim, the Indiana Court of Appeals concluded that if the hearing was not properly recorded, state law permitted the probable cause finding to be reconstructed, such that a challenge on this ground would not have aided Dorsey's defense. *Dorsey*, No. 46A04-1109-PC-563, slip op. at 9-10. This court is bound by the state court's determination of this state law issue. *Ben-Yisrayl*, 540 F.3d at 555 (federal habeas court is "bound by a state court's interpretations of state law"). Because Dorsey has not established that the underlying argument he

---

[3]   In the state proceedings, Dorsey presumed the hearing was not properly recorded because the state did not respond to a *pro se* request he made for a transcript of the hearing prior to trial. *See Dorsey,* 46A04-1109-PC-563, slip op. at 9. The Indiana Court of Appeals was unconvinced that the hearing had not been properly recorded based solely on this omission, since it was not clear that Dorsey had made a proper request for the transcript; however, the court presumed that even if Dorsey could establish a factual basis for this claim, it would not entitle him to relief. *Id.* This court adopts the same presumption here.

wanted counsel to make had a reasonable probability of changing the outcome of the proceeding, he cannot establish a claim of ineffective assistance of counsel on this ground. *See Stone*, 86 F.3d at 717. Accordingly, this claim is denied.

Pursuant to RULE 11 of the RULES GOVERNING SECTION 2254 CASES, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, Dorsey's claims are not cognizable in this proceeding or are otherwise without merit. The court finds no basis to conclude that jurists of reason could debate the outcome of the petition or find a reason to encourage Dorsey to proceed further. Accordingly, the court declines to issue Dorsey a certificate of appealability.

III.    CONCLUSION

For the reasons set forth above, the petitioner's "Verified Motion for Default Judgment" (DE 13) is DENIED. The amended petition (DE 5) is DENIED, and the petitioner is DENIED a certificate of appealability.

SO ORDERED.

ENTERED:   September 10, 2013

_____ /s/ JON E. DEGUILIO _____
Judge
United States District Court

14